**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMIE MILES, et al., | ) | Case No. 5:08CV00585 |
| | ) | |
| | ) | JUDGE SARA LIOI |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |
| RAYMOND CORPORATION, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on separate motions for partial judgment on the pleadings filed by defendants Andersen & Associates, Inc. ("Andersen") and Raymond Corporation ("Raymond") (collectively, "Defendants"). (Doc. Nos. 42 & 45, respectively). Plaintiffs Jamie Miles (individually and as personal representative of the estate of Karla Grinder) and Karen Schonauer (individually and as legal guardian of minor child K.G.,) (collectively, "Miles" or "Plaintiffs") responded to the motions (Doc. Nos. 46 & 48), and Defendants filed replies (Doc. Nos. 47 & 51). The motions are fully briefed and ripe for decision.

**I. Introduction[1]**

On October 4, 2006, Karla Grinder died when the stand-up forklift she was operating traveled underneath a horizontal rack, causing the rack to intrude into her operating space, striking her back and pushing her body up onto the operator's panel, effectively crushing her between the rack and the operator's panel. (Compl. ¶ 10.) Grinder died of compressive

---

[1] The following facts are taken from Plaintiffs' First Amended Complaint, filed October 6, 2008, (Doc. No. 39) and are assumed to be true for purposes this decision. Unless otherwise noted, all record citations to the complaint are to the First Amended Complaint.

asphyxia. (*Id.* ¶ 11.) The forklift she was operating was manufactured by Raymond and had been sold to Grinder's employer, Wooster Brush, by Defendants in October 2003. (*Id*. ¶¶ 9, 15.)

Plaintiffs bring this wrongful death action against Raymond and Andersen based upon their alleged involvement in the manufacturing and marketing of the forklift at issue. Plaintiffs filed their initial complaint on March 6, 2008, and amended it on October 6, 2008. In the amended complaint, they assert the following claims: design defect (against Raymond (Count I) and against Andersen (Count VII));[2] inadequate pre-sale warning or instruction (against Raymond (Count II) and against Andersen (Count VIII)); inadequate post-sale warning or instruction (against Raymond (Count III) and against Andersen (Count IX)); failure to conform to representation (against Raymond (Count IV) and against Andersen (Count VI)); direct statutory liability in negligence (against Andersen only (Count V); common law negligence (against Raymond (Count X) and against Andersen (Count XI)); breach of warranties (against both Raymond and Andersen (Count XII)); wrongful death (against both Raymond and Andersen (Count XIII)); survival (against both Raymond and Andersen (Count XIV)); and punitive damages (against both Raymond and Andersen (Count XV)).

In their motions for judgment on the pleadings, both Defendants seek dismissal of the common law negligence and breach of warranties claims, contending that the Ohio General Assembly abrogated all such claims when it enacted the current version of the Ohio Products Liability Act (the "OPLA"), Ohio Revised Code § 2307.71 *et seq*., which became effective April 7, 2005, before Plaintiffs' claims accrued. Additionally, Raymond asks the Court to dismiss the inadequate pre- and post-sale warning claims against it on grounds that those claims, as pleaded by Plaintiffs, fail as a matter of law. Plaintiffs respond by arguing that their common law negligence

---

[2] Count VII against Andersen also includes a claim for negligent design pursuant to Ohio Revised Code § 2307.78. No such statutory claim is asserted against Raymond.

and breach of warranty claims are not "product liability claims" within the meaning of the statute and, therefore, were not abrogated. Plaintiffs also maintain that the inadequate warning claims asserted against Raymond are cognizable under the OPLA and are legally sufficient based upon the facts set forth in the complaint.

## II. Law and Analysis

### A. Standard of Review

Under Rule 12(c), a party may move for judgment on the pleadings any time after the pleadings are closed but early enough not to delay trial. The standard of review for a motion for judgment on the pleadings is the same as for a motion to dismiss for failure to state a claim for relief under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). The district court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). "The motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991) (citation omitted).

### B. Choice of Law

This is a diversity case, so the Court applies the choice of law rules of the forum

state. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). In a personal injury action, Ohio applies the balancing test set forth in the Restatement (Second) Conflict of Laws § 146, which presumes that the location of the injury controls the applicable law unless another state has a more significant relationship to the occurrence and the parties. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 326 F.3d 870, 873-74 (6th Cir. 2003) (citations omitted). The injury giving rise to Plaintiffs' claims occurred in Ohio, so Ohio law appropriately applies to Plaintiffs' state law claims. Product liability claims in Ohio are governed by the OPLA. *Longs ex rel. Estate of Buchanan v. Wyeth*, 536 F. Supp. 2d 843, 849 (N.D. Ohio 2008).

**C. OPLA Preemption**

Defendants contend that Plaintiffs' common law claims are preempted by the recently-enacted version of the OPLA. The Ohio Supreme Court has not yet addressed this issue. Therefore, the court must attempt to predict what the Ohio Supreme Court would do if confronted with the question. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003) (citing *Stalbosky v. Belew*, 205 F.3d 8900, 893-94 (6th Cir. 2000)).[3]

By its terms, the OPLA applies to "recovery of compensatory damages based on a product liability claim," as well as "[a]ny recovery of punitive or exemplary damages in connection with a product liability claim [. . .]." Ohio Rev. Code § 2307.72(A) & (B); *see also Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 842 (S.D. Ohio 2003). The OPLA defines "product liability claim" as follows:

> (13) "Product liability claim" means a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other

---

[3] The Court entertained the possibility of certifying this issue to the Ohio Supreme Court for decision, and the parties submitted their positions regarding certification in writing. Because the Court finds the OPLA preemption issue, which is largely a question of statutory interpretation, capable of decision by reference to existing authorities, the Court finds certification unnecessary.

than the product in question, that allegedly arose from any of the following:

(a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;

(b) Any warning or instruction, or lack of warning or instruction, associated with that product;

(c) Any failure of that product to conform to any relevant representation or warranty.

Ohio Rev. Code § 2307.71(A)(13).

In a relatively recent amendment to the statute, the Ohio legislature added the following language: "Sections 2307.71 to 2307.80 are intended to abrogate all common law product liability causes of action." Ohio Rev. Code § 2307.71(B).

In this case, it is undisputed that Plaintiffs' claims accrued after the amendments to the OPLA went into effect. Accordingly, if the common law negligence and breach of warranty claims asserted by Plaintiffs are covered by the statutory language abrogating common law product liability causes of action, those claims are extinguished. *See Stratford v. SmithKline Beecham Corp.*, No. 2:07-CV-639, 2008 WL 2491965, at *4 (S.D. Ohio June 17, 2008) ("The amended version of the [OPLA] applies to actions that arose after the effective date of the amendments.")

### 1. Common Law Negligence

As it pertains to Andersen, Plaintiffs premise their common law negligence claim on allegations that Andersen "breached its duty to exercise reasonable care as a supplier in connection with its role in the marketing, design, formulation, manufacture, sale, installation[,] servicing[,] and/or maintenance" of the forklift it sold to Wooster Brush and on which Grinder died. (Compl. ¶ 89.) Plaintiffs contend that Andersen knew of the "horizontal intrusion" hazard presented by operation of the forklift in areas of horizontal shelving like that at the Wooster Brush

facility. (*Id.*) Plaintiffs further assert that Andersen failed to warn Wooster Brush and its foreseeable users of the hazard, and could have, but did not, guard against the hazard by installing certain additional equipment on the forklift. (*Id.* ¶¶ 90-91.) Plaintiffs style their common law negligence claims against Andersen as "including but not limited to Negligent Representation and Negligent Failure to Warn Pre and Post-Sale." Plaintiffs also assert statutory claims under the OPLA against Andersen for negligence (Count V), design defect and negligent design (Count VII), inadequate pre-sale warning (Count VIII), and inadequate post-sale warning (Count IX) based upon the same factual allegations.

Plaintiffs' common law negligence claim against Raymond is largely the same as the claim against Andersen, save the assertion that Raymond is a "manufacturer," rather than a "supplier." (*Id.* ¶¶ 80-84.) Plaintiffs seek to impose common law liability for Raymond's alleged failure "to exercise reasonable care as a manufacturer in connection with its role in the marketing, design, formulation, sale, installation[,] servicing[,] and/or maintenance" of the forklift. (*Id.*) Plaintiffs claim that Raymond knew about, but failed to warn or protect against, the horizontal intrusion hazard. The claim is styled as "including but not limited to Negligent Design and Failure to Warn Pre and Post-Sale." The statutory claims against Raymond likewise cover the same territory: design defect (Count I); inadequate pre-sale warning (Count II); inadequate post-sale warning (Count III).

To decide the preemption question, the Court looks to Ohio's rules on statutory interpretation. The starting point is the plain language of the statute itself. *State v. Lowe*, 112 Ohio St. 3d 507, 508 (2007). "Statutory language that is plain and unambiguous, and conveys a clear and definite meaning, needs no interpretation." *Sutowski v. Eli Lilly & Co.*, 82 Ohio St. 3d 347, 354 (1998) (citing *State ex rel. Richard v. Bd. of Trustees of Police & Firemen's Disability Pension*

*Fund*, 69 Ohio St. 3d 409, 412 (1994)). In light of the Ohio General Assembly's unequivocal textual pronouncement that the OPLA, as amended, is "intended to abrogate all common law product liability causes of action[,]" if the negligence claims asserted by Plaintiffs (which they concede are "common law" causes of action) are "product liability causes of action," they are preempted.

In this case, the decedent's injury (for which Plaintiffs seek to recover compensatory and punitive damages) unquestionably occurred while she was operating the forklift. It is likewise undisputed that the only factual nexus between Defendants and the decedent (and, therefore, Plaintiffs) is the forklift, which Raymond designed and manufactured and Andersen marketed and sold to the decedent's employer. All of the conduct allegedly engaged in by Defendants relates to the forklift. The forklift is, without question, a "product" under the OPLA. Ohio Rev. Code § 2307.71(A)(12)(a).[4]

Likewise, Defendants' conduct placed at issue by the complaint is described as "marketing, design, formulation, manufacture, sale, installation[,] servicing[,] and/or maintenance" of the forklift. Plaintiffs claim that Defendants performed these actions negligently, and seek to hold them liable on that basis. The OPLA expressly defines product liability claims to include "design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing" of a product, as well as "[a]ny warning or instruction, or lack of warning or instruction,

---

[4] The parties do not dispute this conclusion. The term "product" is defined, in pertinent part, as:

> any object [. . .] that constitutes tangible personal property and that satisfies all of the following:
>
> (i) It is capable of delivery itself, or as an assembled whole in a mixed or combined state, or as a component or ingredient.
>
> (ii) It is produced, manufactured, or supplied for introduction into trade or commerce.
>
> (iii) It is intended for sale or lease to persons for commercial or personal use.

Ohio Rev. Code § 2307.71(A)(12)(a).

associated with that product." Ohio Rev. Code § 2307.71(A)(13)(a) & (b). Thus, Plaintiffs' negligence claims seek recovery of compensatory damages based upon a death allegedly caused by the design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of a product (the forklift), and/or a warning or lack thereof relative to that product.[5] As a result, Plaintiffs' negligence claims are product liability claims as defined by OPLA.

Finally, it is beyond peradventure that Plaintiffs' negligence causes of action are common law claims. *See, e.g., Hertzfeld v. Hayward Pool Prods., Inc.*, No. L-07-1168, 2007 WL 4563446, at *9 (Ohio App. 6th Dist. Dec. 31, 2007). Plaintiffs themselves designated Counts X and XI in the complaint as common law negligence causes of action. Having concluded that Plaintiffs' negligence claims are "common law product liability causes of action" within the meaning of Ohio Rev. Code § 2307.71(B), the only remaining question is whether the statutory language abrogating such claims is sufficient to accomplish that objective.

Plaintiffs offer several arguments why the statute, despite its clear and unambiguous preemptive language, fails to extinguish their claims. None of them is persuasive.

Relying on *Carrel v. Allied Prods. Corp.*, 78 Ohio St. 3d 284 (1997), Plaintiffs maintain that the Ohio General Assembly needed to use more specific language to successfully displace the common law. In *Carrel*, the Ohio Supreme Court stated that "in the absence of language clearly showing the intention to supersede the common law, the existing common law is

---

[5] The face of the complaint also contains vague allegations of negligent installation, servicing, and maintenance of the forklift. (*See, e.g.*, Compl. ¶¶ 80, 88.) In their briefing in opposition to Defendants' motions for judgment on the pleadings, Plaintiffs do not isolate these allegations as a means of escaping the Ohio legislature's preemption pronouncement. Given that the statutory definition does not include such terms, it is conceivable that an injured plaintiff could assert a claim for negligent installation, servicing, or maintenance that does not qualify as a "product liability cause of action" under the statute. An overall review of Plaintiffs' complaint makes clear, however, that they are not asserting such claims. It is rather doubtful that a free-standing and mobile product like a forklift is even capable of "installation," and Plaintiffs certainly do not allege that it was "installed." Likewise, Plaintiffs do not claim that the decedent's injuries arose from negligent maintenance or servicing, as they make no allegation that the forklift was in anything but proper working order when the injury occurred. Thus, the Court need not address whether claims for negligent installation, servicing, or maintenance can escape the preemptive reach of § 2307.71(B) because Plaintiffs assert no such claims.

not affected by the statute, but continues in full force." *Carrel*, 78 Ohio St. 3d at 287. The court in *Carrel* explained that "'[t]here is no repeal of the common law by mere implication.'" *Id.* (quoting *Frantz v. Maher*, 106 Ohio App. 465, 472 (2d Dist. 1957)).

Plaintiffs' reliance upon *Carrel* is misplaced, as the language of § 2307.71(B) clearly proclaims the legislature's specific intention to eliminate common law product liability causes of action. *Carrel* requires nothing more. Indeed, reference to *Carrel* reinforces the conclusion that the language of § 2307.71(B) was effective to abrogate the common law. As the Ohio Supreme Court put it, "[a]ccording to principles of statutory construction, the General Assembly will not be presumed to have intended to abrogate a common-law rule unless the language used in the statute clearly shows that intent." *Carrel*, 78 Ohio St. 3d at 798 (citing *State ex rel. Morris v. Sullivan*, 81 Ohio St. 79 (1909)). This is hardly an attempt by the Ohio General Assembly to repeal the common law "by mere implication." On the contrary, the abrogation language of § 2307.71(B) provides a clear and unequivocal statement of the legislature's intent, which must be given effect. The Court rejects Plaintiffs' repeated references to *Carrel* in their effort to save the common law claims from preemption. When the *Carrel* decision is applied to the current version of the OPLA, it provides no support for Plaintiffs' contentions.[6]

Plaintiffs also insist that their common law negligence claims fall outside the OPLA because they are founded in part upon the alleged failure to warn. This contention is unpersuasive. The statute expressly includes within its definition of "product liability claims" those based upon "[a]ny warning or instruction, or lack of warning or instruction, associated with

---

[6] The dissenting opinion in *Carrel* makes a strong argument that based upon earlier Ohio Supreme Court precedents (which the majority did not distinguish or overrule) the rule of statutory construction applicable in this context is considerably less exacting than the standard articulated by the majority. *See Carrel*, 78 Ohio St. at 292-93 (Cook, J., dissenting). Because the Court finds the language of § 2307.71(B) in any event sufficient (even under the *Carrel* majority's formulation) to abrogate the common law product liability claims asserted in this action, this potential distinction need not be addressed.

th[e] product." Ohio Rev. Code § 2307.71(A)(13)(b). Indeed, Plaintiffs acknowledge that the OPLA covers failure to warn claims by separately pleading their own failure to warn claims under the statute. Plaintiffs cannot credibly argue that the failure to warn claims are somehow divorced from, and exist independently of, the product. Had Defendants not manufactured and sold the forklift to Wooster Brush, they would owe no duty from which Plaintiffs arguably could benefit.

Plaintiffs further argue that their claims are not "product liability claims" under the statutory definition simply because Plaintiffs elected not to plead them under the statute. The statutory definition includes in its description of the term the following language: "a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code [. . .]." Therefore, Plaintiffs reason, their unilateral decision to assert claims outside of the statute is sufficient, by itself, to avoid preemption.

This argument is without merit. The relevant statutory language for determining the preemption issue is that of § 2307.71(B), which provides for abrogation of all "common law product liability causes of action." As explained *supra*, Plaintiffs' claims are product liability causes of action, and under Ohio law it is the substance of the claim, not the manner in which it is pleaded, that determines how it is treated. *See Lawyers Coop. Publ'g Co. v. Muething*, 65 Ohio St. 3d 273, 277-78 (1992). Applying the portion of the definition cited by Plaintiffs in the manner they suggest would render § 2307.71(B) completely meaningless, as a product liability claim asserted pursuant to statute cannot, by definition, be a "common law" cause of action. Principles of statutory interpretation require that the Court give meaning to all the words in the statute whenever possible, *E. Ohio Gas Co. v. Public Util. Comm'n*, 39 Ohio St. 3d 295, 299 (1988), and to strictly avoid any interpretation that renders a provision meaningless or inoperative. *State ex rel. Myers v. Bd. of Educ. of Rural Sch. Dist. of Spencer Twp., Lucas County*, 95 Ohio St. 367, 372-73 (1917).

10

Construing the statute in the manner suggested by Plaintiffs would run afoul of both of these edicts, a result this Court cannot sanction. Allowing Plaintiffs to escape the Ohio General Assembly's clearly expressed intention to abrogate common law product liability claims by this bit of sophistry would needlessly frustrate legislative intent.

Finally, Plaintiffs contend that the statutory preemption provision does not apply to their common law negligence claims because such claims are "entirely independent from whether or not liability may be established against Defendants based on product defects[,]" because, unlike their statutory negligence claims, Plaintiffs attempt to use the common law claims "to impose liability upon Defendants based exclusively on Defendants' conduct as opposed to any alleged defect of their product." (Pl.'s Opp'n to Andersen Mot. for J. on Pleadings, at 5.) In making this argument, Plaintiffs fail to come to grips with either the plain and unambiguous language of the OPLA's preemption provision or with the exact nature of the claims they assert in this case.

Plaintiffs attempt to analogize their common law negligence claims to the type of paradigmatic negligence case involving a dispute over the foreseeability of the harm, which, in turn, goes to establishing the existence of a duty. *Cf. Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (N.Y. 1928). They recite legal principles relative to foreseeability, and insist that they have asserted valid claims against Defendants, independent of any product defect, based upon Defendants' prior knowledge of the risk and their concomitant failure to warn. (See Pl.'s Opp'n to Andersen's Mot. for J. on Pleadings at 6-7.) This argument simply fails to acknowledge that any duties Defendants owed based upon the factual allegations in the complaint relate exclusively to their involvement with the forklift, which is a product. Accordingly, any common law claims arising out of those factual allegations are product liability claims – not, as Plaintiffs would have it, general negligence claims. The specific failure to warn complained of by Plaintiffs is the failure to

11

warn foreseeable users of the forklift of dangers associated with its operation when used in its intended application. Their insistence to the contrary notwithstanding, Plaintiffs simply cannot identify a duty Defendants owed to the decedent independent of the product. And as explained in detail *supra*, the amended version of the OPLA abrogated all common law product liability causes of action. The Court finds that this includes the common law negligence claims asserted by Plaintiffs.

Rejecting each of Plaintiffs' arguments to the contrary, the Court finds that all of Plaintiffs' common law negligence claims asserted in Counts X and XI are common law product liability claims as defined in the OPLA and, therefore, preempted.

### 2. Breach of Warranty

Plaintiffs contend that Defendants made warranties, both express and implied, to Wooster Brush and foreseeable users of the forklift concerning its safe and proper use, as well as its fitness for use in the area of horizontal shelves where the height of the first shelf exceeded the height of the forklift's operator panel. (Compl. ¶ 97.) They assert that Defendants breached these warranties because they were aware of the horizontal intrusion risk and Wooster Brush's intended use, but manufactured, sold, and delivered a forklift to Wooster Brush that remained susceptible to horizontal intrusion when used as intended. (*Id*. ¶¶ 98-101.)

Defendants argue that to the extent Plaintiffs purport to assert breach of warranty claims sounding in product liability, such claims (both express and implied) have been abrogated by the OPLA, and, to the extent Plaintiffs' warranty claims sound in contract, their claims fail as a matter of law. Plaintiffs counter that their warranty claims are cognizable in both tort and contract, arguing that the OPLA does not preempt common law breach of warranty claims, and that the complaint adequately states claims for relief that are separately cognizable under the UCC.

### a. Common Law Warranty Claims

Under Ohio law, breach of warranty claims find authority in both the common law and in Ohio's codification of the UCC. To the extent Plaintiffs' warranty claims are premised upon the UCC (the complaint does not make this clear), Defendants do not argue that OPLA preemption applies. Defendants insist, however, that all warranty claims at common law were abrogated by Ohio Rev. Code § 2307.71(B).

As stated previously, the OPLA expressly declared its intention to abrogate "all common law products liability causes of action." Thus, if the common law express warranty claims asserted by Plaintiffs are "common law product liability causes of action," they are preempted. The same straightforward analysis explained *supra* (relative to the common law negligence claims) yields the conclusion that express warranty claims are similarly covered by the statute. This analysis deals only with common law express warranty claims, not UCC-based claims; by definition, therefore, they are common law causes of action.[7] Likewise, the statutory definition of a product liability claim unequivocally covers express warranty claims. The statute provides that "'[p]roduct liability claim' means a claim or cause of action [. . .] arising from [. . .] [a]ny failure of that product to conform to any relevant representation or warranty." Ohio Rev. Code § 2307.71(A)(13)(c). Finally, the warranty claims asserted here by Plaintiffs are, without question, based upon allegations that a product, the forklift, failed to conform to relevant warranties. The complaint contains no allegation that Defendants issued any warranties unrelated to the product, or that the decedent was injured by the failure of some warranty not connected with the forklift. In short, there is no separating Plaintiffs' express warranty claims from the product. They are, consequently, common law product liability causes of action subject to preemption. Thus, Plaintiffs' express warranty claim, to the extent premised upon Ohio common law (as

---

[7] Plaintiffs do not dispute this. Indeed, they insist that they possess common law express warranty claims.

opposed to contract or statutory law), fails as a matter of law. *See Stratford*, 2008 WL 2491965, at *7 (A claim for breach of express warranty "is a common law products liability claim that is abrogated by the OPLA.")

Likewise, "'[i]mplied warranty in tort' is a common-law cause of action that imposes liability upon a manufacturer or a seller for breach of an implied representation that a product is 'of good and merchantable quality, fit and safe for its ordinary intended use * * *.'" *White v. DePuy, Inc.*, 129 Ohio App. 3d 472, 485 (12th Dist. 1998) (citation omitted). Like the other common law claims asserted by Plaintiffs, it is also a product liability cause of action, as the statutory definition encompasses claims based on the failure of a product to conform to "any relevant [. . .] warranty[,]" and the claims in the complaint all relate to the alleged failure of the forklift to comply with Defendants' warranties. Accordingly, implied warranty claims (both merchantability and fitness for a particular purpose) also constitute common law products liability claims subject to preemption by the OPLA. *See Stratford*, 2008 WL 2491965, at *7.[8]

Plaintiffs' only serious [9] argument against statutory preemption of implied warranty claims is that the definition of "product liability claim" encompasses only express warranties, and excludes implied warranties. As support for this argument, however, Plaintiffs curiously reference the statutory definition of "representation," while ignoring the definition of "product liability claim." Certainly, the statutory definition of "representation" is limited to

---

[8] The Court agrees with the district court's conclusion in *Stratford* that implied warranty causes of action are preempted by the OPLA, but disagrees to the extent the court in *Stratford* found support for that conclusion in any case construing prior versions of the law. Before the recent amendments to the OPLA, Ohio's intermediate appellate courts were split as to whether implied warranty claims remained viable. *See Nadel v. Burger King Corp.*, 119 Ohio App. 3d 578, 585-86 (1st Dist. 1997) (no); *White*, 129 Ohio App. 3d at 479-81 (yes). In 2000, the Sixth Circuit followed *White* in holding that implied warranty claims remained cognizable under the common law of Ohio. *Tompkin v. Am. Brands*, 219 F.3d 566, 576 (6th Cir. 2000). In any event, the question is now purely academic in light of the current version of the OPLA and its clearly expressed intention to abrogate common law products liability claims.

[9] As to the common law warranty claims, Plaintiffs repeat several of the arguments they raised in connection with the negligence claims, including (1) the argument based upon *Carrel*; (2) their contention that their unilateral choice to assert claims outside the OPLA is sufficient to avoid preemption; and (3) that the claims exist independent of any product defect. The Court finds these arguments meritless for the same reasons explained in connection with the negligence claims.

express representations. Ohio Rev. Code § 2307.71(A)(14). But the issue here involves a claim for breach of implied warranty, and thus hinges on whether such a claim fits the statutory definition of product liability claim. The Court finds that the unambiguous statutory language, which covers "any relevant [. . .] warranty," clearly covers implied warranties, as well as express. Ohio Rev. Code § 2307.71(A)(13)(c). The definition of "representation" to which Plaintiffs refer is irrelevant to the issue.

### b. Warranty Claims under Ohio's UCC

Although not explicitly denominated as such in the complaint, Plaintiffs' warranty claims are separately cognizable under contract law and Ohio Revised Code § 1302.26 *et seq.* Raymond provides several reasons why it believes the contract-based breach of warranty claims alleged by Plaintiffs fail as a matter of law. Specifically, Raymond asserts that (1) Ohio law precludes plaintiffs from presenting the same cause of action as both a breach of contract and a tort; (2) the decedent's lack of privity with Raymond compels dismissal of Plaintiffs' breach of warranty claims; and/or (3) the claims are time-barred.

Citing *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1980), Raymond contends that Plaintiffs are barred from asserting any contract-based claims in this action because they are also seeking to recover in tort based upon the same allegations. *Wolfe* stands for the general proposition that "under Ohio law the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Id.* This rule does not apply in this case, however, because the contract and tort claims asserted by Plaintiffs each have separate independent bases in the Ohio Revised Code. *See Prater v. Three C Body Shop, Inc.*, No. 01-AP-950, 2002 WL 479827, at *4 (Ohio App. 10th Dist. Mar. 29, 2002) (citing *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 151 (9th Dist. 1996)) ("a tort claim

15

based upon the same actions as those upon which a breach of contract claim is based exists only if the breaching party also breaches a duty owed separately from that duty created by the contract, that is, a duty owed even if no contract existed.") By enacting the UCC, the Ohio General Assembly provided certain rights and remedies to parties to a contract involving the sale of goods. Likewise, the General Assembly also provided different rights and remedies to those injured by defective products when it enacted the OPLA. Thus, Plaintiffs' contractual and tort claims are based upon separately identifiable statutory duties imposed by law, making the rule set forth in *Wolfe* inapplicable.[10] Raymond fails to cite any cases establishing that a plaintiff asserting tort claims sounding in product liability is barred from pursuing claims under the UCC, and cases to the contrary, which allow such theories to proceed simultaneously, are legion. *See, e.g., Ressallat v. Burglar & Fire Alarms, Inc.*, 79 Ohio App. 3d 43 (3d Dist. 1992); *City of Cleveland v. N. Pac. Group., Inc.*, Nos. 78706, 78871, 79595, 2002 WL 1349205 (Ohio App. 8th Dist. June 20, 2002); *see also Sun Refining & Marketing Co. v. Crosby Valve & Gage Co.*, 68 Ohio St. 3d 397 (1994). Thus, *Wolfe* is no obstacle to Plaintiffs' pursuit of contract-based warranty claims under the UCC.

Raymond next argues that Plaintiffs' breach of warranty claims under the UCC fail as a matter of law because the decedent was not in privity with Raymond. As Plaintiffs point out in their response, Raymond's privity argument fails to account for Ohio case law permitting a plaintiff to establish privity even in the absence of a direct contractual relationship. Specifically, according to several decisions from intermediate appellate courts in Ohio, "when the manufacturer is so involved in the sales transaction that the distributor merely becomes the agent of the manufacturer, then the manufacturer and the ultimate consumer are in privity of contract." *Bobb Forest Prods., Inc. v. Morbark Indus. Inc.*, 151 Ohio App. 3d 63, 83-84 (7th Dist. 2002) (citing

---

[10] This analysis would not change even if Plaintiffs' common law negligence had survived the enactment of the current version of the OPLA. Before such claims were abrogated by statute, the common law imposed duties on product manufacturers and sellers that existed separate and apart from duties imposed by the UCC.

*Mettler-Toledo, Inc. v. Wysong & Miles Co.*, No. 98AP-1462, 1999 WL 1009721, at *3 (Ohio App. 10th Dist. Nov. 9, 1999); *Meyers v. Moore Distrib., Inc.*, No. CA92-07-125, 1993 WL 19093, at *2 (Ohio App. 12th Dist. Feb. 1, 1993)). In addition, "[a] consumer may also have privity of contract with the manufacturer if that consumer is an intended third-party beneficiary to a contract." *Bobb Forest Prods.*, 151 Ohio App. 3d at 84 (citing *Am. Rock Mechanics, Inc. v. Thermex Energy Corp.*, 80 Ohio App. 3d 53, 58-59 (8th Dist. 1992)).[11]

      Plaintiffs assert that the absence of a contract between the decedent and Raymond does not compel dismissal of their breach of warranty claims because they have adequately pleaded privity under both of these judicially-created avenues. Assuming the validity of the cited decisions (without reaching any ultimate conclusion with regard thereto), the Court agrees. In the complaint, Plaintiffs allege that Wooster Brush informed Raymond of the specific dimensions of the area in which it intended to use the forklift and made inquiries about its safety and fitness for use in this application. These allegations put Raymond on adequate notice of Plaintiffs' third-party beneficiary theory since Wooster Brush, as a corporation, can act only through its employees, and the decedent, as a Wooster Brush employee tasked with operating the forklift, was a foreseeable user of the equipment, and thus arguably entitled to benefit from any warranties Raymond made in connection therewith. Additionally, Plaintiffs also allege that Andersen acted as Raymond's agent for purposes of, *inter alia*, marketing and selling the forklift to Wooster Brush. Having alleged the existence of an agency relationship, Plaintiffs have adequately pleaded the existence of privity

---

[11] The Court notes, however, that these cases appear to run counter to (and do not address) cases such as *Bruns v. Cooper Indus., Inc.*, 78 Ohio App. 3d 428, 432 (2d Dist. 1992), which held that a direct contractual relationship between buyer and seller is a necessary prerequisite to a breach of warranty claim under the UCC, as well as to the text of the relevant section of Ohio's UCC, which specifically sets forth several exceptions to the privity requirement but does not create one for employees of the buyer. *See* Ohio Rev. Code § 1302.31. Indeed, as noted in *Bruns*, the Ohio General Assembly considered, but expressly declined to enact, an amendment to the statute that would have expanded the privity exception to employees. 78 Ohio App. 3d at 432. Because resolution of the privity issue ultimately is not required to dispose of Plaintiffs' UCC-based warranty claims, the Court declines to wade into this thicket at the present time.

based upon Raymond's alleged involvement with the sale of forklift. Determining the actual degree of Raymond's involvement in the transaction, and whether such involvement is sufficient to establish privity, involves questions of fact that cannot be resolved on the pleadings. Consequently, the Court rejects Raymond's argument that the lack of a direct contractual relationship between the decedent and Raymond bars her express warranty claims.

Raymond maintains that even if Plaintiffs' breach of warranty claims are otherwise viable, they remain legally defective because the statute of limitations expired before Plaintiffs brought suit. Ohio's UCC imposes a four-year statute of limitations on claims arising from the sale of goods, and expressly states that a breach of warranty claim accrues when tender of delivery is made, regardless of the aggrieved party's lack of knowledge of the breach. Ohio Rev. Code § 1302.98. Here, the forklift was delivered in October 2003, and Plaintiffs did not file suit until 2008, at which time the four-year limitations period had already lapsed. Thus, Plaintiffs' UCC warranty claims are time-barred unless they fit within the single statutory exception to the four-year limitations period, which provides that "where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered." Ohio Rev. Code § 1302.98(B).

In their opposition to Raymond's motion, Plaintiffs contend that Raymond's warranties extended to future performance, and therefore their claims did not accrue until the breach was discovered when the decedent was injured while operating the forklift in 2006. The Court disagrees. The future performance exception is construed narrowly, and courts have been "very harsh in determining whether a warranty explicitly extends to future performance." *Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 820 (6th Cir. 1978).

18

"Emphasizing the word 'explicitly,' [courts] have ruled that there must be specific reference to a future time in the warranty. As a result of this harsh construction, most express warranties cannot meet the test and no implied warranties can since, by their very nature, they never 'explicitly extend to future performance.'" *Id.* (citations omitted). The complaint fails to adequately allege the existence of any warranties of future performance. Plaintiffs do not specifically identify any express warranty made by Raymond (or by Andersen) that included an explicit statement warranting the future performance of the forklift, and they certainly do not identify any reference made to a specific future time period.[12] The only express warranty Raymond admits to providing is one concerning the replacement or repair of defective parts for one year, and that certainly does not qualify as a warranty of future performance. *See Allis-Chalmers Credit Corp v. Herbolt*, 17 Ohio App. 3d 320 (12th Dist. 1984). Thus, Plaintiffs' complaint fails to set forth a cognizable UCC-based breach of warranty claim against Raymond that is not time-barred. As such, to the extent Count XII alleges any UCC-based warranty claims, they are subject to dismissal based upon the statute of limitations set forth in Ohio Revised Code § 1302.98.[13]

---

[12] In their opposition, Plaintiffs cite paragraphs 97 and 101 of the complaint, which allege only that Defendants made and breached express and implied warranties to Wooster Brush and foreseeable users of the forklift, "including but not limited to warranties concerning the alleged proper, safe and/or fitness for use of this forklift in the area of horizontal shelves where the height of the first shelf exceeds the height of the forklift's operator panel." (Compl. ¶¶ 97, 101.) Neither paragraph comes close to adequately alleging a warranty of future performance that Ohio law would recognize.

[13] Unlike Raymond, Andersen did not directly challenge the complaint for failure to properly allege any UCC-based warranty claims. In all likelihood, this can be attributed to Plaintiffs' failure to identify the UCC as a basis for its breach of warranty claims. Because the breach of warranty claims alleged in Count XII are identical as to both Raymond and Andersen – for purposes of their allegations, Plaintiffs' combine the two and refer to them as "Defendants" – the Court finds Plaintiffs' failure to adequately allege any warranties of future performance equally fatal to any UCC-based warranty claims it may have attempted to assert against Andersen.

### 3. Statutory Failure to Warn Claims against Raymond

Counts II and III assert statutory claims against Raymond pursuant to § 2307.76 based upon alleged failure to provide adequate pre- and post-sale warning or instruction. Raymond contends that these claims are defective because they focus on the product's sale, rather than (as the statute requires), its marketing. Plaintiffs maintain that this is a distinction without a difference, since Plaintiffs accuse Raymond of failing to provide adequate warnings at any time prior to Ms. Grinder's death, thus encompassing all of Raymond's pre- and post-marketing conduct.

The statute under which Plaintiffs bring Counts II and III provides in pertinent part:

[A] product is defective due to inadequate warning or instruction if either of the following applies:

(1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:

(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

(2) It is defective due to inadequate post-marketing warning or instruction if, at a relevant time after it left the control of its manufacturer, both of the following applied:

(a) The manufacture knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

(b) The manufacturer failed to provide the post-marketing warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

Ohio Rev. Code § 2307.76(A).

The Court agrees with Raymond that the statute makes the time of marketing, rather than sale, the inflection point for determining whether a claim proceeds under subsection (1) or (2). Here, Plaintiffs assert claims under both subsections, alleging in Count II that at the time the forklift left Raymond's control, Raymond knew or should have known about the risk of horizontal intrusion, but failed to provide an adequate warning concerning that risk (Compl. ¶¶ 34-35), and in Count III that following the "sale and delivery" of the forklift to Wooster Brush, Raymond knew or should have known about the horizontal intrusion risk, but "failed to provide the post-sale warnings or instructions that a manufacturer exercising reasonable care would have provided concerning this hazard [. . .]." (Compl. ¶¶ 39-40.)

Both Counts II and III are adequately pleaded, notwithstanding the possible phrasing errors identified by Raymond. Plaintiffs assert their failure to warn claims under the statute, accusing Raymond of failing to provide adequate warnings in light of its alleged knowledge of the risk. This is all that is required of Plaintiffs at this juncture. At the pleading stage, Plaintiffs likely do not know, and in any event are not required to allege with particularity, what Raymond knew about the horizontal intrusion risk and when. While some clarity might have been added had Plaintiffs omitted references to the sale of the forklift from Counts II and III and instead focused solely on the product's marketing, this issue (if it is one at all) is not fatal to Plaintiffs' claims.

Raymond's efforts to convert this issue into something more substantive are unpersuasive. Raymond argues that allowing Count III to stand somehow prejudges its liability, claiming that Plaintiffs' statement of the claim prevented it from making a post-marketing warning after the product left its control but before its sale to Wooster Brush because "by waiting for a sale

21

and delivery to Wooster Brush, Plaintiffs effectively boxed Raymond in and do not let it fulfill all of its supposed duties to warn until after that sale and delivery." (Raymond's Reply in Support of Mot. for J. on Pleadings, at 12.) Holding that Plaintiffs' pleading states a claim under the statute says nothing about whether Raymond ultimately will be held liable. Raymond's liability turns on the text of the statute as it applies to the facts of the case. If, as Raymond's authorities appear to indicate, the time of marketing bears upon that determination, while the timing of the sale is irrelevant, that will be reflected in the outcome. Likewise, if Raymond fulfilled its duty by providing warnings to someone other than Ms. Grinder, that too will be accounted for.[14] But these are questions that remain to be decided, and they depend upon facts not apparent from the face of the pleadings, making such a decision inappropriate at this juncture. Accordingly, Raymond's motion for judgment on the pleadings as to Counts II and III is denied.

## III. Conclusion

For the foregoing reasons, Andersen's motion for judgment on the pleadings is **GRANTED**, and Counts XI and XII are dismissed as to Andersen because they were abrogated by statute.[15] Raymond's motion for judgment on the pleadings is **GRANTED, in part, and DENIED, in part**. Counts X and XII are dismissed as to Raymond as abrogated by statute. To the extent Count XII asserted breach of warranty claims under the UCC, such claims are dismissed as

---

[14] Raymond repeatedly complains that allowing these claims to proceed will somehow preclude it from proving that it satisfied its duty by providing warnings to someone other than the decedent. In support of this contention, Raymond cites *Adams v. Union Carbide Corp.*, 737 F.2d 1453, 1456 (6th Cir. 1984), which provides that a "manufacturer's duty to warn may be discharged by providing information of the dangerous propensities of the product to a third person [. . .] upon whom it can reasonably rely to communicate the ultimate users of the product[.]" Even Raymond would concede, however, that the question of whether it provided adequate warnings to others is a question of fact that cannot be decided on the pleadings. Moreover, Raymond's general concern is unfounded, since both subsections of § 2307.76(A) require proof that the manufacturer failed to provide adequate warnings or instructions in the exercise of reasonable care under the circumstances. At the merits stage of these proceedings, Raymond certainly may rebut Plaintiffs' evidence on this point by supplying proof of the warnings and/or instructions it provided, regardless of to whom they were given, and may argue that, under the circumstances, such warnings were reasonable.

[15] For the sake of clarity, the Court notes that Count XII is dismissed as abrogated by statute only to the extent it attempted to state breach of warranty claims under the common law of Ohio. To the extent Count XII also encompassed claims under Ohio's UCC, those claims are separately dismissed as time-barred.

time-barred. Counts II and III state viable failure to warn claims against Raymond, and those claims remain pending and shall proceed.

**IT IS SO ORDERED**.

Dated: March 18, 2009

_____

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**